UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE GLOVER,

                    Petitioner,                   Case No. 20-10467
                                                     Hon. Matthew F. Leitman

v.

JEFFREY HOWARD,[1]

                    Respondent.

_____/

## ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; (ECF No. 11), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Maurice Glover is a state prisoner in the custody of the Michigan Department of Corrections.  On February 24, 2020, Glover filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.[2] (*See* Pet., ECF No. 4; Pet., ECF No. 11.)   Glover, proceeding *pro se*, seeks habeas relief from his conviction for conspiracy to commit armed robbery on several grounds.  He claims

---

[1] The proper respondent in a habeas case is the custodian of the facility where the petitioner is incarcerated.  *See* Rule 2(a), Rules Governing Section 2254 Cases.  The Court **ORDERS** that Jeffrey Howard, the warden of Glover's current place of incarceration, be substituted as the Respondent.

[2]  This case was originally assigned to the Honorable George Caram Steeh.  On December 18, 2025, following Judge Steeh's retirement, the case was reassigned to the undersigned.

that the admission of his cell phone records violated the Fourth Amendment, that his trial counsel rendered ineffective assistance, that the state trial court engaged in misconduct by threatening and intimidating a defense witness and trial counsel, and that his appellate counsel was ineffective. (*See id.*)

The Court has carefully reviewed Glover's claims and concludes that Glover is not entitled to relief. Therefore, for the reasons explained below, the Court **DENIES** the petition and **DENIES** Glover a Certificate of Appealability. However, the Court **GRANTS** Glover leave to proceed *in forma pauperis* on appeal.

## I

## A

The Michigan Court of Appeals summarized the facts underlying Glover's conviction as follows:

> In November 2015, Kristofer Miller agreed to have defendant stop by his home. Defendant and Miller had known each other for a "few years;" defendant was aware that Miller grew and processed marijuana in his home, and defendant knew where Miller stored his marijuana. Additionally, two days earlier, defendant was present when Miller called his own mother a "safe," in reference to how Miller's mother provided him with money.

> On that day, defendant and Miller were inside Miller's home when Miller noticed that defendant received a call on his cellular phone; however, Miller only heard "the last bit" of the call where defendant said, "Like, yeah, come on." Subsequently, Miller noticed an automobile pull into his driveway on his surveillance system monitor, and then

he saw two men heading towards his door. Miller went to investigate while defendant remained in Miller's room.

As Miller headed to his door, he encountered the men, and after a brief exchange, one of the men pointed a gun at Miller and demanded that he surrender his cellular phone. After a fight, Miller was beaten and his hands and feet were bound together with zip ties. During this time, Miller attempted to scream and make loud noises to catch defendant's attention, as he hoped defendant would call for help. After Miller was bound, the men demanded to know where to find Miller's marijuana and safe. During trial, Miller explained that he did not have a safe in his home and that the "general public" would not know that he kept marijuana in his home.

Eventually, one of the men, who was never identified, started searching through Miller's home, while the man with the gun stayed to watch Miller. During trial, Miller identified that man as Darnell Jones, but he clarified that he did not know Jones at that time and that he only learned his name during subsequent court proceedings.

Ultimately, Miller slipped free of his bonds and escaped. He returned home after calling the police only to discover that defendant was gone. Video recordings taken from Miller's surveillance system showed that before they left, Jones and the unidentified man had placed guns taken from the inside of Miller's home into defendant's automobile. The recordings also showed that defendant only left after Jones and the other man had departed. Defendant was eventually arrested later that evening while traveling in the same automobile as Jones. Additionally, during trial, cellular phone records showed that defendant had twice called Jones close to when the incident occurred. Jones was charged as defendant's codefendant, and Jones ultimately entered a plea of nolo contendere for armed robbery before defendant's trial.

*People v. Glover*, No. 334631, 2018 WL 1733332, at \*1 (Mich. Ct. App. Apr. 10, 2018).

Based upon these facts, a jury in the Monroe County Circuit Court convicted Glover of conspiracy to commit armed robbery. The state trial court then sentenced him to 250 to 480 months' imprisonment. *See id.*

**B**

Following his conviction and sentence, Glover filed a motion for a new trial in the state trial court. (*See* St. Ct. Mot., ECF No. 19-17, PageID.1064-1079.) In that motion, he claimed that his trial counsel was ineffective for failing to call co-defendant Darnell Jones as a witness. He also requested an evidentiary hearing. The trial court granted that request and held an evidentiary hearing, known as a *Ginther* hearing,[3] on April 25, 2017. (*See* Hr'g Tr., ECF No. 19-12.) It then denied the motion. (*See id.*, PageID.824-827.)

Glover appealed his conviction to the Michigan Court of Appeals. He claimed: (i) his trial counsel was ineffective for failing to call Jones as a witness, (ii) his trial counsel was ineffective for failing to present evidence promised in his opening statement, and (iii) the prosecutor's misconduct caused a key prosecution witness not to testify. The Michigan Court of Appeals affirmed Glover's conviction. *See Glover*, 2018 WL 1733332, at \*1. The Michigan Supreme Court thereafter

---

[3] *See People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

denied Glover's application for leave to appeal. *See People v. Glover*, 917 N.W.2d 73 (Mich. 2018).

Glover then filed a motion for relief from judgment in the state trial court. (*See* St. Ct. Mot. ECF No. 19-13.)  In that motion, he raised the following claims: (i) his trial counsel was ineffective for failing to call Jones as a witness and for failing to conduct a pretrial investigation and prepare for trial; (ii) his appellate counsel was ineffective for failing to raise certain issues on appeal, failing to secure an evidentiary hearing to expand the record, and failing to consult an expert witness; and (iii) the state trial court committed judicial misconduct. (*See id.*)

The state trial court denied Glover's motion for relief from judgment. (*See* State Ct. Order, ECF No. 19-14.)  Glover filed an application for leave to appeal that ruling in the Michigan Corut of Appeals, but the Michigan Court of Appeals denied leave to appeal.  *See People v. Glover*, No. 348902 (Mich. Ct. App. July 8, 2019). The Michigan Supreme Court also denied leave to appeal. *See People v. Glover*, 934 N.W.2d 264 (Mich. Oct. 29, 2019).

In 2020, Glover filed a habeas corpus petition and motion to stay in this Court. (*See* Mot., ECF No. 1, Pet. ECF No. 4.)  The Court granted the motion and stayed the proceedings to allow Glover to raise additional claims in state court.  (*See* Order, ECF No. 8.)

Glover then filed a successive motion for relief from judgment in the state trial court raising a judicial misconduct claim. (*See* St. Ct. Mot., ECF No. 19-16.) The state trial court denied the motion because it did not fall under any exceptions to the bar on successive motions. (*See* St. Ct. Order, ECF No. 19-15.) Glover sought review of that decision in the Michigan Court of Appeals, but that court denied leave to appeal because Glover failed to show he qualified for any exception to the general rule barring appeals from the denial of a successive motion for relief from judgment. (*See* Mich. Ct. Appeals Order, ECF No. 19-19, PageID.1413.) The Michigan Supreme Court also denied leave to appeal. *See People v. Glover*, 962 N.W.2d 281 (Mich. Aug. 3, 2021).

Glover then returned to this Court and filed a motion to lift the stay and re-open this case on September 1, 2021. (*See* Mot., ECF No. 13.) The Court granted the motion. (*See* Order, ECF No. 15.) Glover also filed an Amended Writ of Habeas Corpus Petition (*see* Am. Pet., ECF No. 10) and Petition for Writ of Habeas Corpus (*see* Pet., ECF No. 11). Those filings raise the same claims: (1) Fourth Amendment violation, (2) ineffective assistance of trial counsel, (3) judicial misconduct, and (4) ineffective assistance of appellate counsel. Because the petition (ECF No. 11) includes more expansive argument in support of Glover's claims, the Court considers that filing the operative pleading in this action.

6

Respondent filed a response on March 24, 2023. (*See* Resp't's Ans., ECF No. 18.)  In reply, Glover filed a brief that he previously filed in the Michigan Court of Appeals on direct appeal. (*See* Reply, ECF No. 20.)  The Court has reviewed all of the parties' filings and is now prepared to rule on the petition.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

In his first claim, Glover asserts that the prosecution violated his Fourth Amendment rights when it subpoenaed his cell phone records from a third party.  He argues that a warrant was required because he had a legitimate privacy interest in his cell phone records.

The Court declines to address this claim on its merits because habeas review is not available for this claim.  A Fourth Amendment claim is not cognizable on habeas review if the State provided "an opportunity for full and fair litigation" of the claim.  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  An "opportunity for full and fair consideration of a claim means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim."  *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).  "In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim."  *Id.*

Here, Glover had a full and fair opportunity to litigate this claim in state court. He could have filed a motion to suppress and for an evidentiary hearing before trial in the state trial court, but he did not do so.  Indeed, Michigan state courts routinely hear and rule on such motions, and Glover does not argue otherwise.  Moreover, Glover did litigate this claim on post-conviction review in the state courts.  Because Glover had a meaningful opportunity to litigate this claim, federal habeas review is barred.  Glover is therefore not entitled to relief on this claim.

**B**

Next, Glover claims that he is entitled to habeas relief because his trial counsel was ineffective in the following ways: (1) failing to call co-defendant Jones as a

8

witness, (2) failing to investigate additional witnesses, (3) failing to effectively cross-examine the victim (Kristofer Miller), (4) failing to obtain a defense witness to conduct a cell phone analysis, (5) failing to object to judicial misconduct, (6) failing to move to suppress cell phone records obtained without a warrant, and (7) failing to produce evidence promised to the jury in his opening statement.  For the reasons explained below, Glover is not entitled to relief on his ineffective assistance claim.

**1**

A defendant's right under the Sixth Amendment to the effective assistance of counsel is violated where an attorney's performance was deficient, and the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  To show prejudice under *Strickland*, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Federal claims of ineffective assistance of counsel that have been adjudicated on the merits by a state court are subject to both the deferential *Strickland* standard described above and to the deferential standard of AEDPA. *See Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (describing *Strickland* standard in context of habeas petition).  "The question is not whether a federal court

believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal punctuation and citation omitted).

**2**

Glover first asserts that his trial counsel, Steven Jedinak, was ineffective for failing to call co-defendant Jones as a witness. He maintains that Jones would have provided exculpatory testimony and undermined the victim's credibility. Glover is not entitled to relief on this claim.

**a**

The Michigan Court of Appeals described the facts underlying this claim as follows:

> During trial, defendant had intended to call Jones as a witness; however, the trial court received notification that Jones was refusing to testify. Therefore, the trial court called Jones to the witness stand outside of the presence of the jury and placed him under oath to determine if he planned to testify. Jones quickly clarified that he did plan[] to testify; however, he explained that he wanted to inform the trial court that on the previous day, his attorney approached him with an offer from the prosecution to reduce his sentence in exchange for testimony that Jones had called him on the day of the robbery. The trial court inquired, "If the question were asked of you did [defendant] call you, what would your answer be?" Jones replied, "I would say no. You all can check you [sic] all records that you all have and that should show proof that he didn't call me."

10

> The trial judge asked, "But nobody told you, Mr. Jones, you come in and lie and we'll knock 15 months off your sentence?"  Jones responded, "No, they just said they lookin' [sic] forward for me to pretty much implicate [defendant] saying I called or he called me."  Jones reiterated that defendant did not call him.  Both the prosecutor and Jones's attorney explained that they had never reached a deal and that Jones's attorney was merely relaying a "potential" offer.

> Regardless, Jones began to insist that he had to testify about the purported collusion between the prosecutor and his attorney.  The trial court repeatedly tried to explain to Jones why that testimony could not be offered to the jury.  Jones, however, persisted at expressing his intent to bring his claims before the jury.  Ultimately, defendant's trial counsel elected to not call Jones as a witness, despite defendant's objections to that strategy.

*Glover,* 2018 WL 1733332, at *1-2.

**b**

Jedinak testified at a post-trial evidentiary hearing and explained his decision not to call Jones as a witness.  Jedinak first explained that he had subpoenaed Jones as a witness, but Jones' attorney would not allow Jones to speak to him (Jedinak) before trial.  As a result, Jedinak first heard Jones' version of events and first experienced Jones' demeanor as a witness during the in-court exchange described by the Michigan Court of Appeals above.

Based on what Jedinak heard and saw during that exchange, Jedinak concluded that calling Jones would seriously damage Glover's defense.  Jedinak explained that Jones denied having any phone contact with Glover on the day of the

11

robbery. Critically, that testimony directly contradicted Glover's own testimony and the phone records introduced by the prosecution – both of which reflected that Glover and Jones *did* have contact on the day of the robbery. Jedinak testified that presenting both witnesses would have led the jury to conclude "one of them is lying or both of them are lying, either way, it would have damaged somebody's credibility [and] hurt [Glover's] chances of prevailing." (Hr'g Tr., ECF No. 19-12, PageID.809.) Jedinak added that the prosecution's evidence was "very strong" and that, in his view, introducing testimony that conflicted with Glover's account would have made an already "long shot, very difficult defense" even less convincing. (*Id.*, PageID.812.)

Jedinak was also concerned about Jones' "tirade" and disruptive behavior during the above-described exchange. (*Id.*, PageID.810.) Jedinak feared that if Jones testified, Jones would disregard the trial court's admonitions and attempt to tell the jury about the alleged collusion between the prosecutor and his attorney. (*See id.*) Jedinak feared that such behavior would create additional credibility and admissibility problems and would not benefit Glover's defense. (*See id.*, PageID.805.)

**c**

Following the evidentiary hearing, the state trial court held that Jedinak provided effective assistance, and it denied Glover's motion for new trial. (*See id.*,

PageID.824-827.) The Michigan Court of Appeals thereafter reached the merits of this claim and affirmed. That court held that Jedinak made a reasonable strategic decision not to call Jones as a witness:

> [U]ndermining defendant's credibility would have been a highly questionable strategy where defendant testified that he did not hear any commotion during the incident; he did not call 911 after discovering blood drops and that Miller was missing; he did not call 911 after he discovered guns in his backseat after fleeing from Miller's home, and it was happenstance that he was in the same automobile as Jones on the evening after the incident. Defendant's testimony already straddled the incredible; there was no need to inject testimony that would have pushed defendant's credibility further over the edge.

*Glover*, 2018 WL 1733332, at *4.

### d

The Michigan Court of Appeals' decision rejecting Glover's claim that Jedinak unreasonably failed to call Jones was not contrary to, or an unreasonable application of, *Strickland*. Decisions about whether to call a witness are generally matters of trial strategy. The state court reasonably credited Jedinak's testimony that Jones' proposed testimony would have conflicted with Glover's own account of his communications with Jones, risked introducing improper information to the jury, and further weakened an already difficult defense. Under the doubly deferential standard governing federal habeas review of ineffective-assistance claims, Glover

13

has not shown that the Michigan Court of Appeals unreasonably applied *Strickland* when it rejected this component of his ineffective assistance of counsel claim.

**3**

Next, Glover argues that Jedinak was ineffective for failing to prepare for trial and investigate witnesses. Glover presented this claim for the first time in his motion for relief from judgment in the state trial court. That court denied the claim as "without merit." (St. Ct. Order, ECF No. 19-14, PageID.977.) Absent some indication to the contrary, this type of summary order is an adjudication on the merits to which AEDPA deference applies. *See Harrington v. Richter*, 562 U.S. 86, 99-100 (2011). Glover offers no basis for rebutting that presumption, and the Court finds none. The Court therefore applies AEDPA's deferential standard of review to the state court's decision.[4]

Glover has not established that the state trial court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law. When Glover presented this claim in state court, he did not specify any useful information that would have been obtained through further investigation. He did not identify any particular investigation Jedinak should have undertaken or what evidence or witness testimony may have been discovered from that investigation. His habeas petition

---

[4] Under the same reasoning, the Court applies AEDPA's deferential standard of review to all Glover's ineffective assistance of claims raised for the first time in his motion for relief from judgment and denied in summary fashion.

14

suffers from the same defect. While Jedinak had a duty to conduct a reasonable investigation or to make a reasonable determination that such an investigation was unnecessary, conclusory or speculative assertions that counsel should have done more are insufficient to satisfy the *Strickland* standard. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) ("[C]onclusory and perfunctory ... claims of [ineffective assistance of counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief."). The state court did not unreasonably conclude that Glover's unsupported allegations failed to establish deficient performance or prejudice.

**4**

Next, Glover claims that Jedinak was ineffective when he failed to effectively cross-examine the victim, Kristofer Miller, with allegedly inconsistent testimony given at Jones' preliminary examination. The state trial court rejected this claim on the merits in a summary order, and for the reasons explained above, AEDPA deference applies to that holding.

Glover has not shown that the state trial court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law. In his habeas petition, Glover does not identify the specific inconsistencies at issue, explain how they were material, or articulate how further impeachment would have aided his defense. Instead, he directs the Court to arguments made in his state court post-

15

conviction motion, arguments which also lack factual development and fail to establish deficient performance. (*See* Pet. ECF No. 11, PageID.55; St. Ct. Mot. ECF No. 19-13, PageID.900-905.)

The record further undermines Glover's argument that Jedinak's cross-examination of Miller was deficient. As Respondent observes, Jedinak's vigorous cross-examination of Miller elicited several concessions favorable to Glover's defense. (*See* Resp't's Ans., ECF No. 18, PageID.159.) The state trial court reasonably could have concluded that the additional inconsistencies Glover identified were either immaterial to his defense or less significant than those Jedinak pursued. Likewise, the trial court reasonably could have concluded that questioning on these points would not have created a reasonable probability of a different result.

For all of these reasons, under the doubly deferential standard applicable to ineffective assistance of counsel claims on habeas review, Glover is not entitled to relief on this claim.

**5**

Glover next argues that Jedinak was ineffective when he failed to move for the appointment of an expert on cell-phone records and cell-site mapping. The state trial court denied this claim when it denied Glover's motion for relief from judgment. Glover has not identified a particular expert witness who Jedinak should have sought to have appointed, nor has he shown that any witness would have been willing or

16

able to testify favorably for him with respect to the cell-phone records and cell-site mapping at issue.  A claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation.  *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006).  Because Glover has offered nothing more than speculation that an expert witness could potentially have been helpful to his defense, he has not shown that the state trial court unreasonably rejected this component of his ineffective assistance claim.

**6**

Next, Glover argues that Jedinak was ineffective when he failed to object to alleged judicial misconduct involving Jones.  He claims that during the exchange between the state trial court and Jones described above by the Michigan Court of Appeals, the trial court threatened and intimidated Jones and Jedinak, leading Jedinak to decide not to call Jones as a defense witness.  He says that Jedinak should have objected to this alleged misconduct and that his failure to do so prejudiced his defense because it resulted in the absence of important testimony from Jones.

The state trial court denied this claim when it denied Glover's motion for relief from judgment.  When it did so, it rejected Glover's argument that the decision not to call Jones was driven by the court's conduct.  That determination was not an unreasonable application of *Strickland*.

17

As explained above, Jedinak testified at a post-trial hearing and explained his decision not to call Jones, and, as Jedinak testified, that decision was based upon factors other than the trial court's conduct, including Jones' unpredictability and the likelihood that his testimony would contradict both Glover's account and the relevant phone records. Simply put, the trial court's conduct did not cause Jedinak to decide not to call Jones as a witness, and thus Glover has failed to show prejudice from Jedinak's failure to object to that conduct. On this record, the trial court reasonably concluded that Jedinak was not ineffective when he failed to object to the state court's conduct with respect to Jones.

**7**

Glover next argues that Jedinak should have moved to suppress certain cell phone evidence under the Fourth Amendment because that evidence was obtained pursuant to a subpoena rather than a warrant. The state trial court rejected this claim when Glover raised it in his motion for relief from judgment, and Glover has not shown that the trial court's decision denying relief was contrary to, or unreasonably applied, the *Strickland* standard.

In his motion for relief from judgment, Glover relied on *Carpenter v. United States*, 585 U.S. 296 (2018), for the proposition that cell-site location information is generally protected under the Fourth Amendment and, therefore, the police should have obtained a warrant before collecting the relevant records here. But the Supreme

18

Court did not decide *Carpenter* until two years *after* Glover was tried, and Glover has not identified any decisions in existence at the time of his trial that would have required the police to obtain a warrant. The state trial court could therefore have reasonably concluded that Jedinak was not ineffective for failing to raise a *Carpenter*-like challenge to the admission of the cell-site evidence. *See Thompson v. Nagy*, No. 18-1747, 2018 WL 8731570, at *3 (6th Cir. 2018) (finding habeas petitioner's state appellate counsel was not ineffective for failing to raise an argument based on *Carpenter* because *Carpenter* was decided after petitioner's direct appeal). Glover therefore has not shown the state court unreasonably applied *Strickland* to this component of his ineffective assistance claim.

**8**

Finally, Glover argues that Jedinak was ineffective when he failed to follow through on a prediction he made in his opening statement. In that portion of his opening statement at issue, Jedinak said:

> Here's what I believe the evidence is going to show today, I believe the evidence will show that Kristofer Miller knew both Darnell Jones and Maurice Glover, separately. I believe the evidence will show that Mr. Glover had one particular transaction with Mister -- with Mr. Miller. Mr. Miller had another particular transaction with Mr. Jones, but those are separate events. They just happened to occur contemporaneously near the same property.

19

(ECF No. 19-7, PageID.347-348.)   Glover contends that only Jones could have supplied this testimony and that Jedinak's failure to call Jones created a negative inference that undermined the defense.

Glover raised this claim on direct appeal, and the Michigan Court of Appeals rejected it.  It held that Jedinak was not ineffective for failing to call Jones and that Glover was not prejudiced by Jedinak's reasoned decision not to call Jones. *See Glover*, 2018 WL 1733332, at \*5.  Glover has not shown that the state court's denial of this claim was contrary to, or an unreasonable application of, *Strickland.*

Although a defense attorney's unfulfilled promise to produce a witness can create a negative inference, *see English v. Romanowski*, 602 F.3d 714, 729 (6th Cir. 2010), that principle does not apply here.  Jedinak did not promise that Jones would testify or attribute the anticipated evidence to any specific witness.  Additionally, Jedinak did present evidence – testimony by Glover himself – that supported, at least inferentially, the statements set forth above from Jedinak's opening statement.  Under these circumstances, the Michigan Court of Appeals did not unreasonably reject this claim of ineffective assistance of counsel.

## C

Next, Glover claims that he was denied his constitutional right to a fair trial by the state trial court's misconduct.  As explained above, Glover claims that the trial court intimidated co-defendant Jones and Jedinak to such an extent that Jedinak

20

decided not to call Jones as a witness at trial.  Glover presented this claim for the first time in his motion for relief from judgment filed in the state trial court.  That court denied the claim, holding that Jedinak opted not to call Jones because Jones was "intentionally disruptive and willing to induce a mistrial."  (St. Ct. Order, ECF No. 19-14, PagID.944.)  Glover has not shown that the trial court's decision was contrary to, or an unreasonable application of, clearly established federal law.

The Fourteenth Amendment's Due Process Clause guarantees a criminal defendant the right to a fair trial in a fair tribunal.  *See In re Murchison*, 349 U.S. 133, 136 (1955).  A judge may engage in misconduct if the judge "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible," but expressions of "impatience, dissatisfaction, annoyance, and even anger" do not, standing alone, establish a due process violation. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).  In addition, adverse judicial rulings, standing alone, almost never demonstrate misconduct.  *See id.*

The basis for Glover's claim is not supported in the record.  As discussed above, Jedinak offered multiple reasonable explanations for declining to call Jones as a witness, and none of those explanations suggested that the decision was influenced by the state trial court's actions.  Nor is there any indication that the trial court's conduct caused Jones to refuse to testify.  To the contrary, Jones made clear that he was willing to take the stand but intended to disregard the court's rulings by

21

testifying about matters deemed inadmissible.  Although the trial court's colloquy with Jones and Jedinak reflected the court's frustration, the court's remarks were not inappropriate given Jones' repeated unwillingness to abide by court rulings.

For all of these reasons, Glover has failed to show that the trial court's denial of this claim was contrary to, or an unreasonable application of, Supreme Court precedent.

**D**

Finally, Glover asserts that his appellate counsel was ineffective for failing to raise certain issues on direct appeal, seek an evidentiary hearing to expand the record, and consult with an expert witness.  Glover presented these claims in his motion for relief from judgment in the state trial court, and that court denied the claims without specifically discussing them. (*See* St. Ct. Order, ECF No. 19-14, PageID.977.)  Glover offers no basis for rebutting the presumption that this was a merits-based determination, so the Court applies AEDPA's deferential standard of review to the state court's decision.

Glover has not shown that the state trial court's decision was contrary to, or an unreasonable application of, clearly established federal law. A court-appointed appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  As discussed above, none of the omitted claims are meritorious.  And appellate counsel

is not ineffective for failing to raise meritless issues. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).

Glover's claim that his appellate counsel failed to seek an evidentiary hearing is also incorrect. Appellate counsel moved for and was granted an evidentiary hearing at which counsel adequately presented Glover's claims. Glover also fails to show that his appellate counsel was ineffective for failing to retain an expert witness for the same reason his related ineffective assistance of trial counsel claim failed: he offers no basis to conclude that an expert witness would have aided his appeal. The trial court therefore reasonably denied this claim.

For all of these reasons, Glover is not entitled to federal habeas relief on this claim.

**IV**

Before Glover may appeal the Court's decision, he must obtain a Certificate of Appealability. To obtain a Certificate of Appealability, a petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate that denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

As discussed above, the Court concludes that Glover is not entitled to habeas relief on any of the claims in his petition.  Reasonable jurists would not debate the Court's conclusion.   Therefore, the Court **DENIES** Glover a Certificate of Appealability.

Although the Court declines to issue Glover a Certificate of Appealability, the standard for granting an application to proceed *in forma pauperis* ("IFP") on appeal is not as strict as the standard for a Certificate of Appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002).   While a Certificate of Appealability requires a substantial showing of the denial of a constitutional right, a court may grant IFP status on appeal if it finds that an appeal may be taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a).  Although jurists of reason would not debate this Court's resolution of Glover's claims, an appeal could be taken in good faith. Therefore, Glover may *proceed* IFP on appeal.

## V

For the reasons explained above, **IT IS HEREBY ORDERED** as follows:

- Glover's petition for writ of habeas corpus (ECF No. 11) is **DENIED**;

- A Certificate of Appealability is **DENIED**; and

- Leave to proceed *in forma pauperis* on appeal is **GRANTED** because an

  appeal could be taken in good faith.

  **IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 13, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 13, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
